UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          *      CRIMINAL ACTION

VERSUS                            *      NO. 04-094

DONALD SYLVESTER                  *      SECTION "F"


ORDER AND REASONS

Before the Court are several motions filed by Donald Sylvester: (1) 28 U.S.C. § 2255 motion to vacate, set aside, or correct a sentence; (2) motion for discovery; (3) motion to amend his motion to vacate; and (4) and (5) separate motions for extension of time to file a reply. For the reasons that follow, Sylvester's motion to amend is GRANTED; his second motion for extension of time to reply is construed as a request for leave to submit reply papers and is GRANTED; his first request for an extension of time to file reply papers is DENIED as moot; and, finally, his request for discovery and his motion to vacate are both DENIED.

Background

On September 10, 2007, a jury convicted the petitioner, Donald Sylvester, a/k/a Big, of the contract murder of a federal grand jury witness, Demetra Norse, and of related drug and firearms offenses. Sylvester was acquitted of conspiracy to murder Tyrone McCaskill. The Court sentenced Sylvester on June 4, 2008 to life imprisonment on Counts 1, 4, 5-9, a term of 360 months on Count 2,

1

a term of 240 months on Count 3, and a term of 120 months on Count 11. He is presently incarcerated in Coleman, Florida. He now challenges the constitutionality of his confinement, which arises out of the following evidence that was presented during his trial:

On April 4, 2003, Demetra Norse testified before a federal grand jury about a cocaine and crack distribution conspiracy. Two months later, on June 4, 2003, Demetra Norse was shot and killed in broad daylight at the corner of Almonaster Street and Law Street in New Orleans. An investigation followed.

Rahsaan Johnson, who was being held awaiting arraignment on other charges, told law enforcement that Terrence Lash had admitted his involvement in the Norse murder. He agreed to wear a wire to record his jailhouse conversations with Lash.

On February 17, 2004, Johnson and Lash were being held together until their arraignment on a superseding indictment. While Johnson was wired, Lash admitted that he hired Donald Sylvester to murder Norse because she was going to be a witness in a federal trial. After a recorded call, including Lash, about the contract murder of another individual named Tyrone McCaskill, DEA Agent Chad Scott, Assistant United States Attorneys Maurice Landrieu and Matt Coman met with Lash; after they played him portions of the February 17 tape, Lash agreed to cooperate with the government. Lash told the agents about his involvement in the Norse murder, and he agreed to place a recorded call to Sylvester

to "call off the hit" on McCaskill on March 2, 2004. The day after Lash made the recorded call to Sylvester, the government executed a search warrant for Sylvester's residence and his gold Ford Taurus.[1] During the search of the Taurus the agents found Sylvester's driver's license and an ID card; five individual baggies containing cocaine; cell phones; a newspaper article dated February 9, 2004 from the Times-Picayune that refers to various murders including the murder of Demetra Norse; a disposable camera and photographs including photos of Sylvester and Lash; and a notebook of handwritten rap lyrics which described killing witnesses.

The next day, on March 4, 2004, the government obtained an arrest warrant for Sylvester in connection with Norse's murder. Four days later, accompanied by his then-attorney, Robert Jenkins, Sylvester surrendered at the Hale Boggs Federal Building in New Orleans. Agent Scott handcuffed Sylvester and advised him of his <u>Miranda</u> rights, and he was taken to a conference room, at which time AUSA Maurice Landrieu again <u>Mirandized</u> Sylvester. At that time, Landrieu and Coman and Agent Scott played a segment of the February 17, 2004 recording, in which Lash identified Sylvester as Norse's murderer. AUSA Landrieu then informed Sylvester that, if

---

[1]DEA Agent Chad Scott, who was involved in recording Lash's call to Sylvester on March 2, prepared the affidavits underlying the search warrants; he then took them to a district judge, who signed them.

he agreed to cooperate and plead guilty to the murder, then he (Landrieu) would recommend that the government not seek the death penalty. After initially denying his involvement, Sylvester met privately with his lawyer, Mr. Jenkins, and then, again meeting with the federal agents, was confronted with the other evidence that the government agents had, including a description of the killer and a partial description of the killer's car from the 9-1-1 caller, other recordings, photos of Sylvester and Lash, cocaine, and the notebook of rap lyrics describing killing witnesses. Sylvester then leaned forward and put his head in his hands, at which time Jenkins asked to speak privately with his client. After consulting privately with counsel, Sylvester and his counsel again rejoined the agents. Sylvester then confessed to his involvement in murdering Demetra Norse.[2] (During Sylvester's confession, Jenkins requested a proffer agreement but AUSA Landrieu refused, insisting as had already been explained to Sylvester several times that any information he gave would be used against Sylvester; ultimately, Sylvester continued his confession, providing details to the agents and also responding to their questions.) A few days later, however, Sylvester retreated and decided he would rather

---

[2]In testifying during his trial, Sylvester disputes the government agents' testimony that he confessed to the Norse murder. In fact, Sylvester testified that the federal agents tried to coerce a confession by telling Sylvester the details of the murder for hire but Sylvester testified that he "never admitted to nothing they told [him]" during the March 4 meeting, and he testified that he "never confessed to a murder."

obtain new counsel and go to trial.  He did.  Evidence of his guilt
was overwhelming.

A single count indictment was filed on April 1, 2004, charging
Sylvester with the contract murder of a government witness.  On
July 9, 2004, Sylvester moved to suppress his confession of March
8, 2004 as violative of Federal Rule of Evidence 410, arguing that
his March 8 statements were made during the course of plea
negotiations with the government.  After an evidentiary hearing and
submission of post-hearing memoranda, in November 2004, the Court
denied the defendant's motion, finding that Sylvester made a
knowing and voluntary waiver of his rights under Rule 410.[3]

On September 14, 2006, the Government filed an 11-count
superseding indictment.  In addition to the charges relating to the
murder of Demetra Norse, the superseding indictment charged him
with drug conspiracy, a murder conspiracy (relating to a conspiracy
to murder Tyrone McCaskill), drug possession, conspiracy to possess
weapons in furtherance of a drug crime, and being a felon in
possession of a firearm.[4]

---

[3]Meanwhile, the prosecutor sought permission to seek the
death penalty; at some point in December 2005, however, the
Attorney General denied the request for permission to seek the
death penalty.

[4]The list of charges:
- conspiracy to possess with intent to distribute cocaine
  hydrochloride and cocaine base ("crack"), in violation of 21
  U.S.C. §§ 841(a)(1) and 841(b)(1)(A) *(Count 1)*;
- knowing and intentional possession with intent to distribute
  cocaine hydrochloride, in violation of 21 U.S.C. §§

The trial began on August 27, 2007; on September 10, 2007, the jury convicted Sylvester of all counts except the Tyrone McCaskill

---

        841(a)(1)*(Count 2)*;

- conspiracy to possess firearms in furtherance of a drug trafficking crime (possession with intent to distribute cocaine hydrochloride and crack) and in furtherance of crimes of violence (in Counts 4 through 9), in violation of 18 U.S.C. § 924(o)*(Count 3)*;

- knowing use and carrying a firearm in relation to drug trafficking crime and crimes of violence, in violation of 18 U.S.C. 924(c)(1)(A), and in the course of murder, in violation of 18 U.S.C. § 924(j) and 2 *(Count 4)*;

- conspiracy to murder Demetra Norse to prevent her testimony at a federal trial regarding conspiracy to possess with the intent to distribute and to distribute cocaine hydrochloride and crack, in violation of 18 U.S.C. §§ 1512(a)(1)(A) and 1512(a)(3)(A)*(Count 5)*;

- murder of Demetra Norse by shooting her multiple times with the intent to prevent her testimony at federal drug trial, in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(3)(A) and 2 *(Count 6)*;

- conspiracy to murder Demetra Norse with the intent of retaliating against her for testimony at grand jury proceeding and for providing information to law enforcement about her knowledge in federal drug conspiracy case, in violation of 18 U.S.C. §§§ 1513(a)(1)(A), 1513(a)(1)(B), and 1513(a)(2)(A) *(Count 7)*;

- murder of Demetra Norse by shooting her multiple times with the intent of retaliating against her for her testimony at a grand jury proceeding about federal drug conspiracy case, in violation of 18 U.S.C. §§§ 1513(a)(1)(A), 1513(a)(2)(A), and 2 *(Count 8)*;

- murder of Demetra Norse with the intent of retaliating against her for providing information to a law enforcement officer about federal drug conspiracy case, in violation of 18 U.S.C. §§§ 1513(a)(1)(B), 1513(a)(2)(A), and 2 *(Count 9)*;

- conspiracy to murder Tyrone McCaskill ("T-Bone") with the intent to prevent the testimony of McCaskill at a federal drug trial concerning his knowledge of facts relating to a murder and a federal drug conspiracy, in violation of 18 U.S.C. §§§ 1512(a)(1)(A), 1512(a)(3)(A), and 1512(k) *(Count 10)*;

- felon in possession of a firearm, in violation of 18 U.S.C. §§§ 922(g)(1), 924(a)(2) and 2 *(Count 11)*.

count. Following his sentencing on June 4, 2008 (to life imprisonment on Counts 1, 4, 5-9, a term of 360 months on Count 2, a term of 240 months on Count 3, and a term of 120 months on Count 11), Sylvester, through counsel, filed a timely notice of appeal; however, the U.S. Fifth Circuit Court of Appeals affirmed this Court's judgment. United States v. Sylvester, 583 F.3d 285 (2009). Sylvester then filed a writ of certiorari to the United States Supreme Court, which was denied, making Sylvester's conviction final on January 25, 2010. Sylvester v. United States, 130 S.Ct. 1313 (2010). On January 19, 2011 Sylvester, pro se, certified that he was placing in the prison mailing system a motion in which he requested additional time to file his § 2255 motion; the motion was docketed by the Clerk of Court one day before the one-year statute of limitations would run on the filing of Sylvester's motion to vacate his conviction or sentence; the Court denied the request on January 31, 2011.

Meanwhile, on January 20, 2011, Sylvester, pro se, certified that he was placing in the prison mailing system his § 2255 motion, which would render it timely filed pursuant to 28 U.S.C. § 2255(f). It was not until later, however, that Sylvester, pro se, filed a motion for discovery, motion to amend, and (for the first time) a memorandum in support of his § 2255 motion.[5] And, since the

---

[5]When Sylvester submitted his initial application for habeas relief, which was docketed on January 28 (but apparently submitted to the prison mailing system on January 20), no

government has filed its opposition papers, Sylvester has filed two requests for extensions of time to file reply papers. The government has since filed papers opposing Sylvester's requests for extensions of time.

In his motion for post-conviction relief pursuant to 28 U.S.C. § 2255, Sylvester asserts nine ineffective assistance of counsel claims, and presents several ancillary motions related his § 2255 petition.[6]

I.
*A.*

A petitioner may file a habeas corpus petition pursuant to 28 U.S.C. § 2255, claiming a right to release from custody on the ground that a sentence ordered by a federal court "was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255. The Court "may entertain and determine such motion without requiring the production of the prisoner at the hearing." <u>Id.</u> The Court finds that the record is adequate to

_____

memorandum in support of the petition accompanied the application, which simply listed the asserted grounds for relief; he repeatedly referenced a memorandum of law that was not attached to his habeas application. Although he referenced in the habeas application his memorandum of law by noting ("See Memorandum of Law"), Sylvester's memorandum in support of his motion to vacate was filed more than one month after his application.

[6]The government requests that the Court deny the petitioner's motion without an evidentiary hearing because Sylvester fails to satisfy the two-prong <u>Strickland v. Washington</u> standard.

8

address the petitioner's claims and to dispose of them as a matter of law.  Accordingly, no evidentiary hearing is necessary.  See United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995)("if on th[e] record we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary....").

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996)(citations and internal quotation marks omitted).  A claim that counsel failed to render effective assistance is a constitutional inquiry properly raised by a motion to vacate sentence.  See United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995)(noting that a claim of ineffective assistance of counsel gives rise to a constitutional issue cognizable under section 2255).  Here, Sylvester asserts that both his pre-trial counsel and trial counsel rendered ineffective assistance.  Sylvester also brings a number of motions related to, or seeking to supplement, his § 2255 motion.  The government opposes Sylvester's motions, contending that the ineffective assistance of counsel claims raised in the § 2255 petition fail to satisfy Strickland v. Washington, 466 U.S. 668 (1984), and that the

related motions requesting discovery, an extension of time to reply, and permission to amend his petition lack procedural and substantive merit.

Before reaching the merits of Sylvester's habeas petition, the Court first considers Sylvester's ancillary motions (which could if granted inform his habeas claims). Accordingly, the Court considers whether (1) discovery is warranted; and (2) amendment is permitted.

*B.*

1.  Sylvester is not entitled to discovery because he has not demonstrated good cause.

In his motion for discovery, Sylvester requests two items: a copy of Terrence Lash's proffer statements and the forensic handwriting expert's report; he suggests that these materials are "relevant to a fair disposition" of his Section 2255 claim. The Court disagrees.

Rule 6 of the rules governing § 2255 states:

> (a) Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure....
> (b) Requesting Discovery. A party requesting discovery must provide reasons for the request.

Pursuant to this rule, if specific allegations are made in support of a discovery request, Rule 6(a) confers on the district court discretion to determine the scope and extent of the discovery. Bracy v. Gramley, 520 U.S. 899, 909 (1997)(holding that petitioner

demonstrated good cause for discovery on his due process claim of actual judicial bias where petitioner was convicted before judge who had since been convicted of taking bribes from defendants in criminal cases); Harris v. Nelson, 394 U.S. 286, 299 (1969)("where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."). Good cause exists where "specific allegations before the court show reason to believe that petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." Bracy, 520 U.S. at 909.

Sylvester is not entitled to discovery under Rule 6 to support his ineffective assistance of counsel claims.

In his motion for discovery, Sylvester fails to articulate any specific allegations to support his request. Instead, he refers the Court to his § 2255 motion, which he claims "addresses the importance of these documents on Petitioner's claims." However, even considering Sylvester's assertions in his memorandum in support of his § 2255 claim, his motion for discovery must be denied. In pursuing grounds 4, 5, and 8 Sylvester asserts a need for additional discovery, but he falls short of satisfying the requisite good cause standard: he fails to assert specific allegations that would show reason to believe that -- if the facts

are fully developed -- he may be able to demonstrate that he is entitled to relief.

Sylvester claims that he needs the forensic handwriting expert's report to contradict the government's assertion that certain rap lyrics, which describe the killing of a government witness, contained in a notebook were written by Sylvester. The Court disagrees. During his own direct examination at trial, Sylvester acknowledged writing certain lyrics, including "He hit women and children if they are old enough to testify . . . ," and he also admitted that he collaborated with another rap artist on a lyric that describes putting "holes in the snitch." Finally, Sylvester admitted that the "holes in the snitch" lyric was typical of the music he wrote. Given Sylvester's own admissions on direct examination, his attorney's decision not to call a forensic handwriting expert to the witness stand to testify to the ownership of the rap lyrics was reasonable. See Strickland v. Washington, 466 U.S. 668, 690 (1984) ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").[7]

Sylvester next asserts that a copy of Terrance Lash's proffer

---

[7]Sylvester's request for discovery of the forensic expert's report is further undermined by the government's observation that the forensic document examiner who reviewed the lyrics concluded that, in fact, the handwriting in the notebook belonged to Sylvester.

statement is necessary to assist in supporting his claim that his counsel was ineffective in failing to appeal a Sixth Amendment confrontation violation, and for his claim that the government violated <u>Brady</u> and <u>Jencks</u> by withholding the statement. Again, the Court disagrees. The government represents that Sylvester did in fact receive a copy of Lash's proffer. Indeed, the government's assertion is supported by the record: during the trial, Sylvester's counsel referred to and questioned witnesses about Lash's statements; it was the defense's theory that "Lash was lying to Johnson and he was lying to the agents.... Lash, after the fact, admitted he had lied about Donald." Sylvester fails to demonstrate how another copy of the proffer statements would enable him to "demonstrate that he is . . . entitled to [habeas] relief." <u>Harris</u>, 394 U.S. at 299. He is not entitled to discovery.

    2.    Sylvester's request to amend his petition is granted.

        (a) Rule 2 of the Rules Governing § 2255 Cases

In considering Sylvester's request to amend his habeas petition, the Court first draws attention to the deficiencies in his original application.

A habeas petition must comply with the Rules Governing § 2255 Cases, including the form requirements of Rule 2:

    **(b) Form.** The motion must:
        (1) specify all the grounds for relief available to the moving party;
        (2) state the facts supporting each ground;
        (3) state the relief requested;
        (4) be printed, typewritten, or legibly handwritten;

and
>      (5) be signed under penalty of perjury by the
> movant....
>     **(c) Standard Form.** The motion must substantially
> follow either the form appended to these rules or a form
> prescribed by a local district-court rule. The clerk
> must make forms available to moving parties without
> charge.

By requiring that habeas petitioners "specify all grounds for relief available [and] state the facts supporting each ground," Rule 2 of the Rules Governing § 2255 Cases demands a more detailed statement than the "short and plain statement" required by Federal Rule of Civil Procedure 8 in ordinary civil proceedings. <u>See</u> <u>id.</u>; <u>see also</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 648 (2005)(describing analogous rule applicable to state habeas petitions as "more demanding" than Rule 8 of the Federal Rules of Civil Procedure).

Sylvester's § 2255 motion complies with the application form that governs § 2255 motions insofar as he completed each section of the form and listed, as follows, nine ineffective assistance of counsel claims:

| | |
|---|---|
| **Ground One:** | Counsel rendered ineffective assistance by failing to secure a proffer during petitioner's alleged plea negotiations. |
| **Ground Two:** | Counsel rendered ineffective assistance of counsel by failing to raise on appeal the validity of the attorney client privilege. |
| **Ground Three:** | Counsel rendered ineffective assistance of counsel for failing to request the removal of a bias juror for cause. |
| **Ground Four:** | Counsel was ineffective for failing to produce a report from forensic document examiner in support of petitioner's defense. |

| | |
|---|---|
| **Ground Five:** | Counsel was ineffective for failing to raise on appeal [that the] Government committed Brady/Jenks violation during trial. |
| **Ground Six:** | Counsel rendered ineffective assistance for failing to request Frank v. (Delaware) hearing, in light of falsehood in the affidavit for the search warrant for petitioner's vehicle. |
| **Ground Seven:** | Counsel was ineffective for failing to call a key eye witness to the crime to the witness stand. |
| **Ground Eight:** | Counsel was ineffective for failing to raise on appeal that petitioner's Sixth Amendment confrontational rights were violated during trial. |
| **Ground Nine:** | Counsel rendered ineffective assistance for failing to stipulate under <u>Old Chief v. United States</u> as to defendant's prior convictions. |

In so listing, Sylvester failed to complete those portions of the form calling for an explanation of the "supporting facts" for asserted ground for relief; instead, he typed "(SEE MEMORANDUM OF LAW)". But the referenced "memorandum of law" was not included with his original § 2255 submission. Accordingly, his application seemed to fall short of compliance with Rule 2 insofar as he failed to state the facts supporting each asserted ground for relief.[8]

Nonetheless, in accordance with Rule 4 of the Rules Governing § 2255 Cases, once Sylvester's § 2255 motion was filed into the record, the Court ordered the United States attorney to file a response to Sylvester's habeas petition. Less than one week before

---

[8]The Court notes that Sylvester did not simply assert in conclusory fashion that "counsel was ineffective"; rather, he incorporated some facts in his statement of his claims, at least enough for the Court to understand the thrust of his claims.

the government submitted its response, but more than one month after the limitation period for submitting his habeas petition had expired, Sylvester filed a motion for discovery and a motion to amend his § 2255 motion, in which he seeks to add a 25-page memorandum in support of his § 2255 motion, presumably the memorandum referenced in, but not included with, his § 2255 motion.

The Court now considers Sylvester's request to amend his § 2255 motion.

(b) Rule 15 of the Federal Rules of Civil Procedure

Invoking the liberal amendment policy of Federal Rule of Civil Procedure 15, Sylvester requests that he be permitted to amend his § 2255 petition. He points out that he timely filed his § 2255 motion; "[h]owever," Sylvester concedes, "Petitioner failed to file[] a memorandum in support of § 2255 motion, [o]n which Petitioner relies to support his claims."

Rule 15 of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course...(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading...." Fed.R.Civ.P. 15(a)(1)(A) and (B). Further, "[a]n amendment to a pleading relates back to the date of the original pleading when...the amendment asserts a claim...that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed.R.Civ.P.

15(c)(1)(C).

Rule 12 of the Rules Governing § 2255 Cases authorizes district courts to apply to habeas proceedings the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure "to the extent that they are not inconsistent with any statutory provisions of these rules." Indeed, "[i]t is well settled that Rule 15 applies to federal habeas proceedings." United States v. Gonzalez, 592 F.3d 675, 679 (5th Cir. 2009)(citation omitted). A supplemental or amended petition must be made within the one-year limitation period unless it relates back to the original petition. Id. That is, when a proposed amendment raises a new claim that does not relate back to the original § 2255 motion, it is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996. See id. at 680. "New claims of ineffective assistance of counsel," the Fifth Circuit has observed, "do not automatically relate back to prior ineffective assistance of counsel claims simply because they violate the same constitutional provision." Id. Rather, the Supreme Court instructs district courts, when considering relation back, to examine whether the petitioner's proposed amendment asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). If so, then the proposed amendment does not relate back to the original pleading and is therefore time-barred. See id.

In _Felix_, to resolve a Circuit split, the U.S. Supreme Court considered the meaning of Federal Rule of Civil Procedure 15's relation-back provision in the context of federal habeas proceedings and the AEDPA's one-year statute of limitations. _See id._ at 653-54. The petitioner timely filed his habeas petition challenging the admission of statements of a witness elicited in pretrial interrogation in his original petition; he later filed an untimely amended petition challenging the admission of his own statements, obtained at a different time and place. _Id._ at 648-49. Felix argued that because the Fifth Amendment is not implicated until statements are introduced at trial, the relevant "transaction or occurrence" was the trial itself; thus, he argued, the subsequent habeas claim related back to the original timely application. _Id._ at 660. The Supreme Court rejected Felix's expansive argument on the ground that the predicate for the claim that his own statement had been illegally obtained was an "extrajudicial event" and not the trial itself. _Id._ at 661. Accordingly, the Supreme Court held that "[a]n amended habeas petition does not relate back (and thereby escape AEDPA's one year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." _Id._ at 650.

It is undisputed that Sylvester's request to amend his § 2255 motion was filed outside the one-year limitations period imposed by

the Antiterrorism and Effective Death Penalty Act of 1996. 28
U.S.C. § 2255(g)(1). Nevertheless, although he does not make the
argument, Sylvester's proposed "amendment" (which is, in reality,
the memorandum in support and the only true substantive portion of
his § 2255 motion) would not be time-barred if it relates back to
his original § 2255 pleading under Federal Rule of Civil Procedure
15(c)(1). Because his amendment enhances his habeas claims by
setting forth facts that are the same in time and type as those
nine ineffective assistance of counsel claims set forth in the
original pleading, his amendment relates back. <u>See</u> Fed.R.Civ.P.
15(c)(1)(B).[9] And, given that the amendment was filed within the
deadline for amendments "as a matter of course" (indeed, the
amendment was filed before the government submitted its responsive
pleading),[10] the amendment must be permitted. <u>See</u> <u>United States v.</u>
<u>Gonzalez</u>, 592 F.3d 675, 681 (2009).[11]

---

[9]Rule 15(c)(1)(B) provides:

An amendment to a pleading relates back to the date of
the original pleading when...the amendment asserts a
claim or defense that arose out of the conduct,
transaction, or occurrence set out-or attempted to be
set out-in the original proceeding.

[10]The most recent amendments to the federal rules confirm
that the right to amend once as a matter of course is no longer
terminated by service of a responsive pleading; rather, the right
to amend terminates 21 days after service of a responsive
pleading or motion.

[11]It is questionable, as the government points out, whether
Sylvester's initial habeas petition should have survived the
Court's preliminary inspection. However, the Court construes pro

3.   The Court will consider Sylvester's reply papers.

Sylvester has also requested, on two occasions, an extension of time to submit a reply.   Rule 5(d) of the Rules Governing § 2255 Cases allows a habeas petitioner to submit a reply within a time fixed by the Court.   Accordingly, Sylvester's second motion for extension of time to file a reply (which attaches his proposed reply papers) is construed as a motion for leave to file a reply and is GRANTED, and his first motion for extension of time to file a reply is DENIED as moot.   The Court will consider Sylvester's reply papers in evaluating the substantive merit of Sylvester's § 2255 motion.   However, new claims raised for the first time in a reply brief need not be considered.   See United States v. Cervantes, 132 F.3d 1106, 1111 (5th Cir. 1998)(holding that a district court does not abuse its discretion in refusing to consider new issues raised in a § 2255 reply brief after the government filed its response).

## II.

The Merits: Substantive review of Sylvester's habeas petition confirms that it lacks any factual basis or legal support.

*A.*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the

_____

se filings liberally and, in any event, the Court ordered the government to submit a response such that the preliminary inspection issue is moot.

right ... to have the Assistance of Counsel for his defense." U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  Strickland v. Washington, 466 U.S. 668 (1984).

Ineffective assistance of counsel claims are reviewed under Strickland's familiar two-prong standard, which requires that the defendant "show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense."  466 U.S. 668, 687 (1984).  Under the deficient performance prong, the Court considers whether "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed...by the Sixth Amendment"; counsel's conduct must be reviewed "on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  In other words, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness" measured according to "prevailing professional norms."  See id. at 688.  The prejudice prong requires the defendant "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694 (noting that the petitioner must demonstrate that "counsel's errors were so serious as to deprive the petitioner of a fair trial").  "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of a criminal trial]."  Id.  Significantly, "[t]his is a heavy burden which

requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." <u>United States v. Wines</u>, --- F.3d ---, 2012 WL 3336182, at *5 (5th Cir. Aug. 15, 2012)(citing <u>Harrington v. Richter</u>, 131 S.Ct. 770, 787 (2011) and <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1403 (2011)). Finally, because the petitioner must make both showings to obtain habeas relief, there is no requirement that a court "address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland</u>, 466 U.S. at 697.

*B.*

Mindful that "[s]urmounting <u>Strickland</u>'s high bar is never an easy task",[12] the Court considers each asserted ground for habeas relief based on ineffective assistance of counsel.

1. Ground 1

Sylvester's first asserted ground for habeas relief is that his pre-trial attorney, Robert Jenkins, was ineffective for failing to secure a proffer during his plea negotiation on March 8, 2004 in which Sylvester confessed to killing Norse in exchange for AUSA Maurice Landrieu's recommendation that the government would permit Sylvester to plead guilty and face a life sentence, instead of seeking the death penalty.

Sylvester contends that Jenkins should have secured a proffer

---

[12]<u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)(citing <u>Strickland</u>, 466 U.S. at 689, 693)("Judicial scrutiny of counsel's performance must be highly deferential.").

agreement so that Sylvester's statements could only be used against him in the event that plea negotiations fell through, and he took the stand at trial. The government counters that Jenkins' strategy at the March 8 meeting was to ensure that the death penalty would not be pursued (and he was successful) and that the record shows that a proffer was not an option such that Sylvester's ineffectiveness claim must fail. The Court agrees.

Sylvester provides no support for his claim that the absence of a proffer was due to Jenkins' neglect or deficient conduct as a matter of law. In fact, the record establishes that a proffer was not an option during the March 8 meeting, notwithstanding Jenkins' attempt at securing one. Maurice Landrieu testified that a proffer was not an option available to Sylvester. And, indeed Jenkins himself testified that, when he requested one, the request was denied.[13] It is worth noting that, at the time of the confession, the record suggests that Lash had agreed to cooperate against Sylvester, had provided a full proffer admitting their complicity in the murder, and had recorded Sylvester as they delayed the killing of a second individual. The government had searched Sylvester's gold Taurus, from which it seized individually-wrapped packages of cocaine, photographs of Lash and Sylvester together, a local newspaper article about the Norse murder, and rap lyrics

---

[13]Sylvester does not appear to dispute Jenkins' and Landrieu's testimony that a proffer was requested; rather, he challenges the failure to secure a proffer.

depicting the street shooting of cooperating witnesses.[14]

The Court also draws attention to the irony in Sylvester's contention that Jenkins' failure to secure a proffer constitutes ineffective assistance of counsel and deprived him of a fair trial. Sylvester ultimately testified at his own trial and, during his testimony -- under oath -- emphatically denied ever confessing to authorities; rather, Sylvester testified that all of the other March 8 meeting participants (who testified that Sylvester confessed) were lying. He now claims that Jenkins' performance in allowing him to confess without a proffer falls below an objective standard of reasonableness. The Court finds his contention without any merit whatsoever.

In his memorandum in support (but not in his motion), Sylvester contends that Jenkins' assistance was deficient for another reason: Jenkins, Sylvester suggests, urged him to confess to Norse's murder without making an independent investigation into the facts of the case. Sylvester insists that, if Jenkins had investigated, he would have discovered that the government had no admissible evidence of Sylvester's guilt.[15]

_____

[14]And, at trial, the government presented the evidence obtained from Lash's and Sylvester's seized cell phones; the call logs showed that Sylvester neither made nor received calls during the Norse murder but talked often before and after she was killed.

[15]The Court notes that this is not the first time that Sylvester has presented this theory; during Jenkins' cross-examination, Sylvester's trial counsel exhaustively challenged

With respect to counsel's duty to investigate, the Supreme
Court observed in <u>Strickland</u>:

> In any ineffectiveness case, a particular decision not to
> investigate must be directly assessed for reasonableness
> in all  the circumstances, applying a heavy measure of
> deference to counsel's judgments.... The reasonableness
> of counsel's actions may be determined or substantially
> influenced by the defendant's own statements or actions.
> Counsel's actions are usually based, quite properly, on
> informed strategic choices made by the defendant and on
> information supplied by the defendant.  In particular,
> **what investigation decisions are reasonable depends
> critically on such information**.  For example, when the
> facts that support a certain potential line of defense
> are generally known to counsel because of what the
> defendant has said, the need for further investigation
> may be considerably diminished or eliminated altogether.
> **And when a defendant has given counsel reason to believe
> that pursuing certain investigations would be fruitless
> or even harmful, counsel's failure to pursue those
> investigations may not later be challenged as
> unreasonable.**  In short, inquiry into counsel's
> conversations with the defendant may be critical to a
> proper assessment of counsel's investigation decisions,
> just as it may be critical to a proper assessment of
> counsel's other litigation decisions.

466 U.S. at 691 (emphasis added).  These observations are
dispositive of Sylvester's failure-to-investigate challenge.

Putting aside the irony that Sylvester maintained under oath
at trial that he did not confess during the March 8 meeting,
Sylvester's add-on claim challenging his pre-trial counsel's
effectiveness fails for the additional reason that Sylvester cannot
demonstrate that Jenkins' performance during the March 8 meeting

Jenkins regarding whether he had performed a proper investigation
into the facts of the case.  Once again, however, this Court
draws attention to the trial evidence, which established
Sylvester's guilt beyond any reasonable doubt.

was objectively unreasonable: the record shows that Jenkins and Sylvester reported to the U.S. Attorney's Office in New Orleans so that Sylvester could turn himself in as a result of an outstanding arrest warrant; when they arrived, Sylvester was placed under arrest for the murder of a grand jury witness; the federal agents and Assistant U.S. Attorneys played the tape (in which Lash identified Sylvester as the triggerman in Norse's murder); Jenkins asked to and did speak privately with Sylvester;[16] Jenkins decided that he and Sylvester would hear what else the agents had to say; the federal agents and attorneys went through a list of other evidence (aside from the tape) that they had against Sylvester, such as the color of the vehicle the triggerman was driving; when Jenkins saw Sylvester sinking in his chair in response to the checklist of other evidence, Jenkins asked the federal agents and attorneys to leave the room so he could speak privately again with his client; in this second private meeting Jenkins and Sylvester discussed "the entire matter, the likelihood of what could be the outcome, and it was agreed upon that he would try to help himself

---

[16]During Sylvester's trial, Jenkins testified:

As we went back into the conference room for the first time: we talked about what is first-degree murder; what could happen; this is basically the killing of a witness; that you would go before a jury; it's not necessarily that you could get death but you could get life as well. We talked about that.

in this particular case."[17]

In short, after being confronted with the evidence against Sylvester and after speaking with his client privately (and his client having admitted his guilt), Jenkins' strategy at the time of the March 8 pre-trial meeting was to get the death penalty taken off the table. This he accomplished. Based on the circumstances that unfolded during the meeting, Sylvester has failed to show that Jenkins' strategy fell below an objective standard of reasonableness.[18] What's more, Sylvester has failed to demonstrate that -- if Jenkins' conduct somehow could be considered deficient -- but for Jenkins' alleged error, the result of the proceeding would have been different. Sylvester persistently testified at trial that he did not confess. But the jury chose to believe the other witnesses and the inculpatory evidence presented at the meeting and ultimately at trial.[19] Sylvester falls well short of

_____

[17]In particular, Jenkins testified that Sylvester stated "'They got me. They got me. What can I do to help myself?'" And in response Jenkins told Sylvester that he would try to get some help for Sylvester "in terms of getting the death penalty off the table."

[18]Sylvester does not appear to dispute Jenkins' testimony that he had advised Sylvester that his sentencing exposure in the event of a confession (and ultimately a plea) would be life imprisonment, but that the more severe penalty of death could be available if he instead decided to go to trial. Certainly discussion of these matters fall within the range of competence of counsel in criminal cases.

[19]The Lash tape recording was played for the jury, but with a limiting instruction that it be considered only as probative of Sylvester's state of mind during the March 8 meeting and not for

proving that Jenkins' conduct was deficient or that, even if it was, that he was prejudiced by Jenkins' performance.[20]

2.   Ground 2

Second, Sylvester asserts that his trial attorneys, Michael Fawer and Richard Westling, were ineffective for failing to raise on appeal this Court's finding that the attorney-client privilege between Jenkins and Sylvester had been waived.  However, during trial proceedings, this Court was well-briefed on the issue by both parties prior to ruling that it had been waived.  Sylvester fails to raise any legal or factual error in this Court's original ruling, and the Court finds that its original finding of a waiver was correct.  Accordingly, Fawer and Westling's failure to raise this issue on appeal was objectively reasonable, given that it could be considered frivolous for them to pursue the issue.

Furthermore, when (as here) appellate counsel files a merits brief, he "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000)(citing Jones v. Barnes, 463 U.S. 745 (1983)).

_____

the truth of the matters asserted.

[20]In response to Sylvester's trial counsel's challenge to his performance, Jenkins testified that, once Sylvester admitted to him his involvement, "[i]n terms of an investigation, if I even tried to put on any evidence of an alibi, anything of that nature, if he had already told me that, that would be improper and false."

Indeed, "it is difficult to demonstrate that counsel was incompetent," the U.S. Supreme Court has acknowledged, when a habeas petitioner "[pursues] a Strickland claim based on counsel's failure to raise a particular claim [on appeal]." Id. (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")). Here, Sylvester's counsel argued on appeal that (1) this Court "erred in allowing the prosecution to use in its case-in-chief statements Sylvester made during failed plea negotiations when he, as a condition to negotiations, knowingly and voluntarily waived his right to object to such use" and (2) there was no evidence supporting Sylvester's cocaine conspiracy conviction. See United States v. Sylvester, 583 F.3d 285, 287, 295 (5th Cir. 2009). Sylvester now says that they should have also challenged on appeal this Court's finding that the attorney-client privilege had been waived. But Sylvester has failed to demonstrate that the waiver of attorney-client privilege issue was stronger than the issues appellate counsel presented. Accordingly, he has failed to show that appellate counsel was incompetent in raising some, but not all, issues on appeal. Counsel's decision on which issues to raise on direct appeal clearly was a matter of professional judgment.

3. Ground 3

Third, Sylvester contends that his trial counsel was

ineffective for failing to request the removal of a biased juror from the panel. Because Sylvester has failed to demonstrate that the juror was biased such that counsel's performance was deficient in failing to request her removal, and because Sylvester likewise has failed to show prejudice, his third ground is without merit.

Just after jury selection, the Court was advised that one of the jurors had become emotional during the lunch break and was afraid to serve on the jury because the charges involved murder of a grand jury witness; she apparently feared retaliation against her and her family from whomever might have been responsible for the murder. After that juror was excused, the Court allowed Sylvester's trial counsel to probe the other jurors in chambers to determine whether the emotional juror had infected the others' impartiality. In particular, Sylvester contends that trial counsel was ineffective for failing to request removal of Juror #10, whom he contends was a biased juror.

"[T]he right to a jury trial guarantees to the criminally accused a fair trial by a tribunal of impartial, 'indifferent' jurors." See Virgil v. Dretke, 446 F.3d 598, 608-09 (5th Cir. 2006)(citing the Sixth Amendment and quoting Irvin v. Dowd, 366 U.S. 717 (1961)). However, "the Supreme Court has never required that jurors come ready to serve with a blank slate, without preconception or understanding of the real world." Id. at 609. Rather, the Supreme Court has observed:

> To hold that the mere existence of any preconceived
> notion as to guilt or innocence of an accused, without
> more, is sufficient to rebut the presumption of a
> prospective juror's impartiality would be to establish an
> impossible standard. It is sufficient if the juror can
> lay aside his impression or opinion and render a verdict
> based on the evidence presented in court.

Irvin v. Dowd, 366 U.S. 717, 723 (1961). A juror is biased if her views would prevent or substantially impair the performance of her duties. Soria v. Johnson, 207 F.3d 232, 242 (5th Cir. 2000). If a juror is not biased, then counsel's failure to challenge that juror does not support a claim for ineffective assistance of counsel. See Virgil, 446 F.3d at 608-09.

Sylvester has failed to demonstrate that Juror #10 was biased and, therefore, his trial counsel's failure to request her removal from the panel does not render his assistance ineffective.

When counsel for Sylvester was questioning Juror #10 about how the excused juror's expressed fears may have affected her, counsel asked if she were Donald Sylvester, would she want herself on the jury; she replied "no", suggesting that she was fearful.[21] Juror #10's acknowledgment of fear must be considered in context, however; when counsel for the government followed up and questioned Juror #10, the following colloquy occurred:

Counsel: What we are all trying to accomplish here is a

---

[21]Juror #10 stated "It's not innocense or guilt. It's apprehension [or] fear of what [the excused juror was] relating to personally." When asked if she could be fair and impartial, Juror #10 stated "I think so. I think so. Are my fears allayed? No."

fair trial.  To get a fair trial, you have to
have jurors that are going to be fair.  They
are going to sit and they are going to listen
to all of the evidence....  The indictment,
you know, it's just a charge.... I guess the
question is, maybe, because of the nature of
the charges, that those fears are going to
arise, but can you set that aside as the judge
asked you if you could do...can you set that
aside..., and understand that it's the
government's burden and listen to the
evidence, not sit there and say, "I know he is
guilty because I know what the indictment says
and the indictment says something that scares
me?" ... The question is...if the judge
instructs you what your duties are and what
you must do, can you do it...or not? That's
really what we are trying to get at.  Would
you be able to listen to the evidence.  As you
said, you haven't heard the evidence.

Juror #10: That's true.

Counsel:  Without letting any lawyers put any words into
your mouth, do you believe you could give
[Sylvester] a fair trial, follow the
instructional rules, or do you --

Juror#10: No, the fear -- the nature of the charges
results in fear.  Yes I think I could.

Counsel:  Why do you think that?

#10:      I'm a pretty level-headed, figure-things-out,
listen-to-things kind of person.

Juror #10's honesty about her fear regarding the nature of the

charges hardly suggests a showing of bias or any preconceived

notion as to Sylvester's guilt.  "It is sufficient if the juror can

lay aside his impression or opinion and render a verdict based on

the evidence in court"; and this is precisely what Juror #10

ultimately confirmed that she could do.  See Virgil, 446 F.3d at

32

608-09. Sylvester has failed to show that his trial counsel was reasonably obliged to request Juror #10's removal.[22] And, in any event, Sylvester likewise fails to show that counsel's failure to request removal of Juror #10 resulted in prejudice, given that he has not shown that she was biased.[23]

4. Ground 4

Fourth, Sylvester claims his counsel was ineffective because he failed to produce a forensic document examiner's report. Sylvester says his defense required an expert's report to contradict the government's assertion that a notebook of rap lyrics, which describe the killing of a government witness, were written by him. But counsel cannot be ineffective for failing to take actions he has no basis to pursue; nor can Sylvester show that he was prejudiced by his counsel's failure to introduce expert evidence on this fact, particularly in light of Sylvester's own

---

[22]Juror #10 never suggested that she could not be fair and impartial. And, in ultimately deciding not to request that Juror #10 be singled out and excused, counsel for Sylvester very candidly observed:

> ...I think [Juror #10] is honest in the sense that she's troubled by it. She was honest enough to say that she didn't think she would have the frame of mind that she would want her as a juror if she was sitting as a defendant, but nevertheless she felt she could put aside her trepidations. I don't really think deep down that her position is any different than many of the others who are sitting on this jury, so my motion for a mistrial is not based on simply her statement....

[23]Sylvester also ignores that his counsel did request a mistrial, which was denied.

admissions on the witness stand that he personally wrote some lyrics contained in the notebook, and collaborated with other rap artists on others.

Sylvester, during direct examination, acknowledged writing certain lyrics such as "He hit women and children if they are old enough to testify", and he admitted that he collaborated with another rapper on other lyrics, including those that describe putting "holes in a snitch." Given Sylvester's own admissions on direct examination, this Court has already determined that his attorney's failure to call a forensic handwriting expert to the witness stand to testify as to the authorship of the rap lyrics was a reasonable trial strategy decision. <u>See</u> <u>supra</u>; <u>see</u> <u>also</u> <u>Strickland</u>, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."). Moreover, Sylvester can hardly demonstrate prejudice by counsel's alleged failure when Sylvester himself admitted during his direct examination that the rap lyrics presented during the government's case-in-chief were written by him or "typical of the kind of music he was involved in writing."

5. Ground 5

Fifth, Sylvester submits that his counsel was ineffective for failing to appeal a <u>Brady/Jencks</u> violation. In particular,

Sylvester contends that his counsel should have appealed the government's failure to provide his counsel with Lash's proffer statements especially in light of the fact that DEA Agent Chad Scott testified to statements made by Lash during Lash's proffer sessions with the government.

As previously noted, when (as here) appellate counsel files a merits brief, he "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000)(citing Jones v. Barnes, 463 U.S. 745 (1983)). Indeed, "it is difficult to demonstrate that counsel was incompetent," the U.S. Supreme Court has acknowledged, when a habeas petitioner "[pursues] a Strickland claim based on counsel's failure to raise a particular claim." Id. (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")). Here, Sylvester's counsel argued on appeal that (1) this Court "erred in allowing the prosecution to use in its case-in-chief statements Sylvester made during failed plea negotiations when he, as a condition to negotiations, knowingly and voluntarily waived his right to object to such use" and (2) there was no evidence supporting Sylvester's cocaine conspiracy conviction. See United States v. Sylvester, 583 F.3d 285, 287, 295 (5th Cir. 2009).

Sylvester has failed to demonstrate that his appellate counsel acted unreasonably in failing to raise what Sylvester suggests is an issue of alleged Jencks/Brady violations.[24]  In fact, any such argument would have been frivolous:  Sylvester's conclusory assertion that the government failed to turn over Lash's proffer statement is undermined by the record.

Not only does the government represent that it provided to Sylvester's counsel a copy of the Lash proffer during discovery, but it is also clear from the trial record that defense counsel persistently challenged the accuracy of Lash's assertions in both his proffer and the tape recordings.[25]  In fact, in pursuing his defense that he did not confess, Sylvester and his counsel insisted that Lash was lying (in his proffer and on the tapes) to law enforcement about Sylvester's involvement in the Norse murder.  In the defense theory urged at trial, Sylvester insisted that the government used Lash's "lies" to make it appear that Sylvester had

---

[24]Jencks material is any statement in the government's possession made by a government witness that relates to the subject of the witness's testimony at a proceeding.  18 U.S.C. § 3500(b).  Upon the defendant's motion, the government must disclose such statements after the witness has testified on direct examination.  Brady material is evidence in the government's possession that is favorable to the defense; it must be disclosed.  See Brady v. Maryland, 373 U.S. 83 (1963) (requiring disclosure of exculpatory evidence); see also Giglio v. United States, 405 U.S. 150, 153-55 (1972)(requiring disclosure of evidence relevant to the credibility of government witnesses).

[25]Indeed, even government witnesses admitted that some of Lash's statements to them were not accurate.

confessed on March 8, 2004, but, the defense pointed out, thereafter Lash recanted his statements about Sylvester both in his trial testimony and in a letter to Sylvester.[26]

Any appeal pursed by defense counsel respecting an alleged Brady/Jencks violation would have been frivolous and, thus, the failure to appeal the issue was not deficient attorney performance as understood by Strickland.

6. Ground 6

Sixth, Sylvester contends his counsel was ineffective for not requesting a Franks v. Delaware hearing. Sylvester believes there was a false statement made in the affidavit used to obtain the search warrant for his car.[27] Consequently Sylvester maintains that, had the Court ruled that the evidence retrieved from his

---

[26]Indeed, in his opening and closing statements, as well as during the cross-examination of government witnesses Scott and Landrieu, Sylvester's counsel repeatedly referenced the "false statements" of Lash, insisting that law enforcement had simply relied on Lash's lies instead of launching a full-scale objective investigation of the facts. The defense prompted admission of the Lash statements and also urged that every Lash statement implicating Sylvester was false and later recanted. All of this was consistent with the defense strategy to challenge the truthfulness of Lash's statements to law enforcement, which the defense suggested the government blindly relied on in order to railroad Sylvester. Sound trial strategy.

[27]In his affidavit in support of the government's request for a search warrant, DEA Agent Scott states, in part, "The affiant also believes that this same vehicle was used in the June 4, 2003 murder Demetra Norse since an eyewitness on the scene of the murder described the gold Taurus and Lash confirmed that Sylvester used the gold Taurus as transportation to commit the murder."

vehicle was inadmissable at trial, he would not have been found guilty of Count 2 of the indictment, nor would the damaging rap lyrics have been admitted as evidence. The government counters that Sylvester's trial counsel covered the allegation of false statements during cross-examination of DEA Agent Scott, who stated that the 9-1-1 caller identified a gold Ford and that Lash had told authorities that Sylvester drove a gold Ford Taurus. Based on this, Sylvester cannot demonstrate that a <u>Franks</u> hearing was warranted. The Court agrees.

In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court held that, under certain circumstances, a defendant is entitled to an evidentiary hearing to afford the defendant an opportunity to attack the veracity of a facially-valid affidavit used to support a search warrant. An affidavit supporting a warrant carries the "presumption of validity," thus, Sylvester would be required to make a "substantial preliminary showing that a statement material to the probable cause finding in a warrant affidavit was knowingly and intentionally false, or was made with reckless disregard for the truth" before he may be granted a hearing. <u>United States v. Symmank</u>, 397 Fed.Appx. 991, 994 (5th Cir. 2010) (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978)).

Here, the failure to move for a <u>Franks</u> hearing does not constitute ineffective assistance of counsel. Sylvester has offered nothing to undermine the finding that the search warrant

was based on probable cause and has no support for any assertion that DEA Agent Scott knowingly or intentionally falsified the affidavit underlying the search warrant. Moreover, defense counsel challenged DEA Agent Scott's credibility by questioning him about his knowledge underlying his affidavit during his cross-examination at trial. His counsel's failure to request a hearing was not deficient attorney performance as a matter of law, and there is no demonstration that the outcome of any such hearing would have been resolved in Sylvester's favor such that he could demonstrate prejudice.

7. Ground 7

Seventh, Sylvester alleges his counsel was ineffective for failing to call Silas Battie, an eyewitness to the murder, to testify. Sylvester asserts that his counsel's failure to call Battie, who in his opinion would have been able to support his defense, made it impossible for the jury to make a judgment as to whether there was a reasonable doubt regarding Sylvester's guilt. The government counters that Sylvester's trial counsel, by not calling Battie, sought to avoid admission of evidence that would have undercut Sylvester's defense theory; instead, the government contends that Sylvester's trial counsel effectively seized on Battie's prior statement that he saw a "gold Contour" (rather than a Taurus) and, by not calling Battie, Sylvester's trial counsel appropriately attempted to minimize the parts of Battie's testimony

that would have reinforced the government's case by not calling him to the stand.

Sylvester's generic hindsight endorsement of Battie as a "key witness" falls short of demonstrating that his counsel was ineffective for not calling him to the witness stand. The Court notes that counsel for defendant vigorously defended the government's charges including, during Sylvester's case, calling an alibi witness and Sylvester himself. Because there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," this Court cannot determine in hindsight that defense counsel's failure to call Battie was anything but "sound trial strategy." Strickland, 466 U.S. at 689.

8. Ground 8

In his penultimate claim, Sylvester argues that counsel was ineffective for failing to raise on appeal that his Sixth Amendment Confrontation Clause rights were violated during his trial because both DEA Agent Scott and Assistant United States Attorney Landrieu used hearsay statements from Sylvester's alleged co-defendant Lash's proffer as evidence for the prosecution. The government counters that Lash's proffer statements and tape recorded statements were actually central to Sylvester's defense and his counsel likewise used Lash's statements in the cross-examination of government witnesses to reinforce the defendant's strategy that the government's case was based on Lash's lies.

Sylvester does not specify which Lash statements Scott and Landrieu offered as "hearsay testimony." But as this Court has already observed with respect to Sylvester's fifth asserted ground for habeas relief, as part of his own aggressive trial strategy, Sylvester's trial counsel attempted to show that Lash had lied, the government had failed to investigate those lies, and that the government had coerced a false confession from Sylvester. Sylvester has failed to show what non-frivolous issue could have been raised on appeal with respect to Lash's statements, which were ultimately recanted and used by the defense at trial to support the defense's theory; Sylvester has again failed to demonstrate ineffective assistance.[28]

9. Ground 9

Finally, Sylvester alleges his counsel was ineffective for failing to request a stipulation as to his prior convictions pursuant to Old Chief v. United States, 519 U.S. 172 (1997). The government counters that the record shows that defense counsel's strategy required that Sylvester had to testify to put forward his

---

[28]To the contrary, the fact that defense counsel persistently and consistently attempted to (and, indeed, in many cases, did) expose Lash's many, often conflicting statements as lies undermines the defendant's claim here that (whatever the unspecified statements Sylvester now challenges) were admitted in violation of the hearsay rules. The Court also notes, as the Fifth Circuit did, that the Lash "tape recording was played for the jury, but with a limiting instruction that it be considered only as probative of Sylvester's state of mind during the plea meeting, and not for the truth of the matter asserted." See Sylvester, 583 F.3d at 287 n.1.

"coerced confession" defense and, therefore, Sylvester's past felony convictions would be admissible during cross-examination. Thus, in an attempt to minimize the impact of such revelations, counsel did not enter a stipulation that would have prevented the jury from hearing the nature of Sylvester's convictions.

In Old Chief, the Supreme Court held that it was an abuse of discretion for a district judge to reject an offer to stipulate when the "name or nature of the prior offense raises the risk of a verdict tainted by improper considerations." Id. at 174. However, the Supreme Court observed that the risk of unfair prejudice associated with offering evidence of specifics of prior convictions similar in nature to the current charge would vary case to case: "That risk ... will be substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning." Id.

Here, the fear that the jury was so distracted by Sylvester's prior convictions that it failed to focus on the federal charges is unsupported. As the government points out, the defense strategy opted for transparency on Sylvester's prior convictions, which incidentally, were by nature less serious than the charges he faced during the trial. It appears that Sylvester's counsel revealed his prior convictions, which involved possessions of small quantities

of drugs[29] so that they could be contrasted with the large scale drug conspiracy and murder of a federal witness with which he was charged by the federal government.  Indeed, consistent with this strategy, in cross-examining government witnesses, defense counsel focused on the absence of indicia of distribution (such as no cash, razors, or baking soda) found in Sylvester's car; counsel tried to suggest instead that perhaps Sylvester (as revealed by his past convictions) was simply a small-quantity user or someone who had small quantities of drugs on hand for partying -- not a large-scale drug conspirator who killed a federal witness.  While this tactic may have had some potential to expose Sylvester to some bad character inference, it was nonetheless a strategic decision and, as such, within "the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  An ineffective assistance of counsel claim on this ground is without merit.

In conclusion, IT IS ORDERED: that (1) Sylvester's motion to amend is GRANTED, (2) his second motion for extension of time to reply is construed as a motion for leave to file reply papers, and is GRANTED; (3) his first motion for extension of time to file reply is DENIED as moot; (4) his motion for discovery is DENIED; and, ultimately, because the record hardly supports a determination

---

[29]Sylvester had two convictions for possession of crack cocaine and one conviction for possession with intent to distribute crack cocaine.

that Sylvester was "left to the 'mercies of incompetent counsel'",[30] (5) his 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence is DENIED; Sylvester's habeas petition is dismissed with prejudice.

New Orleans, Louisiana, September 11, 2012

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[30]<u>Padilla</u>, 130 S.Ct. 1473, 1486 (citation omitted).